IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-HC-2119-D

| | | |
|---|---|---|
| JAMES ANTHONY CLARK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Respondent. | ) | |

On May 20, 2025, James Anthony Clark ("Clark" or "petitioner"), a federal inmate proceeding pro se, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 [D.E. 1]. On September 12, 2025, respondent filed a motion to dismiss or in the alternative for summary judgment [D.E. 9–12]. That same day, the court notified Clark about the motion, the consequences of failing to respond, and the response deadline [D.E. 13]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On November 6, 2025, Clark responded in opposition [D.E. 17]. Clark moves for appointment of counsel and for an extension of time to file future unspecified pleadings [D.E. 18] and to seal documents [D.E. 19]. As explained below, the court grants respondent's motion to dismiss or in the alternative for summary judgment and denies Clark's motions.

I.

Clark challenges a disciplinary proceeding which resulted in the loss of 54 days of good-time credit. See [D.E. 1] 1–8; [D.E. 1-1] 1–14. On August 15, 2023, while incarcerated at Federal Correctional Institution Tucson in Tucson, Arizona ("FCI Tucson"), a correctional officer opened Clark's cell door, and Clark kicked the cell door from the inside and struck the officer's foot with

the door. <u>See</u> Resp't Statement of Material Facts ("RSMF") [D.E. 11] ¶¶ 6, 8.[1] Clark then pushed his way out of the cell and kicked the officer in the knee. <u>See</u> <u>id.</u> ¶ 8. The officer returned Clark to his cell, but Clark then violently kicked the cell door and screamed. <u>See</u> <u>id.</u> Clark's kicking damaged the cell door's locking mechanism, and the cell door could not be secured. <u>See</u> <u>id.</u> Clark disputes kicking the cell door open, kicking the officer, and damaging the cell door. <u>See</u> Clark Decl. [D.E. 17-1] ¶¶ 7–9.

On August 29, 2023, an incident report was issued, and Clark was charged with "the Code 224 prohibited act of assaulting without serious injury, the Code 208 prohibited act of interfering with security devices, and the Code 329 prohibited act of destroying property valued at $100 or less." RSMF ¶ 5. That same day, Clark received a copy of the incident report. <u>See</u> <u>id.</u> ¶ 7. The incident report was suspended pending referral to the FBI for prosecution, which the FBI declined. <u>See</u> <u>id.</u> ¶ 9.

On August 31, 2023, FCI Tucson's chief psychologist determined that Clark was competent to proceed with the disciplinary process. <u>See</u> <u>id.</u> ¶ 10. The chief psychologist reviewed the incident report because Clark was assigned as a Mental Health Care Level 3 inmate. <u>See</u> <u>id.</u>

On September 3, 2023, the incident report was referred to the Discipline Hearing Officer ("DHO"). <u>See</u> <u>id.</u> ¶ 11. That same day, Clark was given a notice of discipline hearing before the

---

[1] A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); <u>see</u> <u>Felton v. Moneysworth Linen Serv., Inc.</u>, 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); <u>Howard v. Coll. of the Albemarle</u>, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), <u>aff'd</u>, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished); <u>United States v. Compassionate Home Care Servs., Inc.</u>, No. 7:14-CV-113, 2017 WL 1030706, at *1 n.1 (E.D.N.C. May 15, 2017) (unpublished); <u>see</u> <u>also</u> Fed. R. Civ. P. 56(e)(2). Clark did not controvert respondent's statement of material facts. <u>See</u> [D.E. 17] 1–5. But the court has considered Clark's declaration in opposition to respondent's motion. <u>See</u> [D.E. 17-1] 1–4; <u>cf.</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Goodman v. Diggs</u>, 986 F.3d 493, 498 (4th Cir. 2021).

2

DHO and advised of his rights at the discipline hearing. See id. ¶ 12. Clark requested a staff representative assigned to his hearing and to call three inmates as witnesses. See id. ¶ 13.

On September 11, 2023, the DHO conducted a hearing. See id. ¶ 14. The DHO noted that Clark had previously chosen to have a staff representative but later "decided to waive his right to a staff representative and signed the waiver of staff representative form." Id. ¶ 15. Clark alleges that he never signed a waiver of staff representative. See Clark Decl. ¶¶ 14, 23.

Clark's three requested witnesses were unavailable for the hearing but provided written statements. See RSMF ¶ 16. Clark acknowledged that he presented the three written statements in lieu of oral statements, and Clark waived his right to have the witnesses appear before the DHO. See id. Clark alleges that he told the DHO that there were two inmates who were passing out lunch trays when the officer opened his cell door but there was only one statement. See Clark Decl. ¶ 15. Clark alleges that he requested that the other inmate be a witness, but his request was denied. See id.

Clark acknowledged that he received a copy of the incident report and understood his rights before the DHO. See RSMF ¶ 17. When provided with an opportunity to make a statement, Clark stated, "I didn't assault anybody." Id. In addition to the incident report, the DHO reviewed and considered staff members' memoranda, medical assessments, staff injury assessments, witness statements, photographs, waiver of staff representative form, and the warden's Unit Discipline Committee ("UDC") extension memorandum. See id. ¶ 18. Clark did not present any documentary evidence. See id. Clark asked the DHO to review the video footage of the incident, and the DHO did. See id. ¶ 19.

After evidence presentation, the DHO found that Clark "committed the prohibited acts of assaulting without serious injury (Code 224) and interfering with security devices (Code 208)."

3

Id. ¶ 20. The DHO sanctioned Clark by disallowing 54 days of good-time credit. See id. ¶ 21. The DHO also imposed a 120-day loss of tablet privileges, visiting privileges, commissary privileges, and email privileges. See id.

On September 27, 2023, the DHO signed and completed the report. See id. ¶ 22. On October 6, 2023, authorities delivered the DHO report to Clark. See id. Upon receiving the DHO report, Clark was notified that he could appeal the DHO's findings through the Federal Bureau of Prisons ("BOP") administrative remedy procedures within 20 days. See id. ¶ 23. Clark alleges that he did not receive a copy of the DHO's report on October 6, 2023. See Clark Decl. ¶¶ 24–30.

In his section 2241 petition, Clark alleges that "[t]he delivery of the incident report was delivered late hindering [his] ability to prepare an adequate defense; the UDC (unit disciplinary counsel) officer acted as an investigator/staff rep by gathering statements from [his] witnesses, something policy for[]bids; [he] was refused a staff [r]epresentative and thus a chance to collect evidence to make a defense; [t]he DHO (disciplinary hearing officer) refused to call witnesses [he] requested, and[] was not an impartial decision maker, she based her decision solely on the officer's statement and ignored all else." [D.E. 1] 2–3. Clark seeks restoration of the loss of 54 days of good-time credit. See id. at 5.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S.

4

at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

Certain procedural safeguards apply to the loss of statutory good time credit. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974). Under Wolff, an inmate is entitled to: (1) written notice of the charges at least 24 hours in advance of the hearing; (2) a written statement by the fact finder as to the evidence relied on and reasons for disciplinary action; and (3) the opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. See id. at 563–66; Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985). Additionally, DHO findings revoking a prisoner's good time credit must be supported by "some evidence in the record." Hill, 472 U.S. at 454–56. But federal courts will not review the accuracy of the DHO's fact-finding de novo or for clear error. See, e.g., Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." Id. (citation omitted).

Clark received the procedural protections to which he was entitled, and some evidence in the record supported Clark's conviction. See, e.g., Hill, 472 U.S. at 454–56; Baker, 904 F.2d at 932. Clark argues that prison officials violated BOP policies by not giving him the incident report within 24 hours of the incident, allowing the UDC officer to gather witness statements, not allowing him the opportunity to question the witnesses himself, and denying him access to a staff

5

representative before the disciplinary hearing. The alleged violations of BOP policies do not implicate Wolff's procedural safeguards and are not cognizable in a section 2241 petition. See, e.g., Seals v. Napier, No. 0:25-508, 2025 WL 1447414, at *2 (D.S.C. Apr. 22, 2025) (unpublished), report and recommendation adopted, 2025 WL 1445326 (D.S.C. May 20, 2025) (unpublished); Jones v. Warden of FCI Bennettsville S.C., No. 0:20-3835, 2021 WL 2228609, at *2 (D.S.C. Jan. 28, 2021) (unpublished), report and recommendation adopted, 2021 WL 1940568 (D.S.C. May 14, 2021) (unpublished); Shahan v. Ormond, No. 3:18CV200, 2018 WL 6681210, at *5 (E.D. Va. Dec. 19, 2018) (unpublished), aff'd, 778 F. App'x 217 (4th Cir. 2019) (per curiam) (unpublished); Beard v. Hollembaek, No. 5:16-HC-2197, 2018 WL 1570798, at *4 (E.D.N.C. Mar. 30, 2018) (unpublished); Clark v. Mosley, No. 6:17-219, 2017 WL 5027347, at *3 (D.S.C. Oct. 30, 2017) (unpublished). Thus, the court dismisses the claims.

As for Clark's arguments that respondent denied his request for a staff representative and that he never signed a form waiving his right to a staff representative, the record demonstrates that Clark did sign a form waiving his right to a staff representative, and his signature comports with other signatures in the record. See [D.E. 12-4] 15; cf. [D.E. 12-4] 7–8, 10, 12, 14. Even if Clark was coerced into waiving his right to a staff representative, Wolff mandates staff representation only when "an illiterate inmate is involved" or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." Wolff, 418 U.S. at 570. Clark is not illiterate, and the issues of whether Clark assaulted an officer and damaged the locking mechanism on his cell door are not complex. See, e.g., Seals, 2025 WL 1447414, at *2; Coleman v. Ray, No. 3:23-CV-82, 2023 WL 8723954, at *8 (N.D. W. Va. Oct. 26, 2023) (unpublished), report and recommendation adopted, 2023 WL 8721467 (N.D. W. Va. Dec. 18, 2023) (unpublished); Ul-Hassan v. Rickard, No. 1:16-

6

10996, 2020 WL 1272087, at *2–3 (S.D. W. Va. Mar. 16, 2020) (unpublished). To the extent Clark argues he should have received staff representation because he was assigned as a Mental Health Care Level 3 inmate, FCI Tucson's chief psychologist determined that Clark was competent to proceed with the disciplinary process. See [D.E. 12-4] 6. Thus, the court dismisses the claims.

As for Clark's claims that the DHO refused to call witnesses he requested, was not an impartial decisionmaker, and based her decision solely on the officer's statement, the record reflects that Clark requested three inmate witnesses, that all three witnesses provided written statements, and that Clark waived his right to have the witnesses appear before the DHO. See [D.E. 12-4] 7–14; see also Foster v. Rivera, No. 9:07-576, 2007 WL 3002330, at *6 (D.S.C. Oct. 10, 2007) (unpublished). At the hearing, the DHO reviewed and considered the three witnesses' written statements, Clark's statement that he did not assault the officer, Clark's prior statement requesting to see psychology because he did not feel safe with his cellmate, the incident report, staff memoranda, medical assessments of both Clark and the officer, photographs of both Clark and the officer, and other documents. See [D.E. 12-4] 16–20. The DHO also reviewed video footage that Clark requested and saw "that the door was pushed or kicked aggressively into the officer, and that he had to use force to get [Clark] back into the cell." Id. at 18–19. Although Clark disagrees with the DHO's assessment, some evidence showed that Clark assaulted an officer and damaged the locking mechanism on his cell door. See, e.g., Serrano v. Warden FCI Bennettsville, No. 22-7315, 2024 WL 1366552, at *2 (4th Cir. 2024) (per curiam) (unpublished). Thus, the court dismisses the claims.

As for Clark's argument that he wanted to interview the three inmate witnesses himself to clarify their statements, "a prisoner has no right to call witnesses at a disciplinary hearing if their testimony would be irrelevant, repetitive, or unnecessary." Hoskins v. Davis, 66 F. App'x 47, 49

7

(7th Cir. 2003) (unpublished). Clark wanted to interview the witnesses himself to establish that he kicked the cell door open because he feared his cellmate. See [D.E. 17] 3 ("The central issue was whether [Clark] assaulted staff by kicking, versus whether the officer ignored repeated pleas from [Clark] that he feared for his safety from his cellmate, then opened [Clark's] cell door, [Clark] tries to exit the cell to aviod [sic] a physical altercation with his cellmate, staff slams door on [Clark's] back pinning him in the doorway then violently shoves him back into the cell with the inmate he is in fear of."). But the DHO considered Clark's statement that he did not feel safe with his cellmate and did not find it pertinent. See [D.E. 12-4] 18. Thus, additional testimony about Clark's fear for his safety would have been repetitive and irrelevant to the issue of whether Clark committed the prohibited acts of assaulting an officer and damaging the locking mechanism on his cell door. See, e.g., McEarchen v. Giley, No. 7:25-CV-772, 2026 WL 1481946, at *3–4 (W.D. Va. May 26, 2026) (unpublished). Accordingly, the court dismisses the claim.

To the extent Clark alleges in a conclusory fashion that his request for another inmate witness was denied because that inmate was transferred, the record reflects that Clark only requested three witnesses, and all three witnesses provided written statements. See [D.E. 12-4] 7–20. Even if Clark requested another inmate witness, Clark fails to make any specific allegations about who he wanted as a witness and what relevant testimony would have been elicited. Moreover, prison officials have the discretion to deny witness requests where legitimate penological interests, such as limiting access to other inmates, justify excluding a witness. See Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004). Thus, the court dismisses the claim.

As for Clark's allegation that he did not receive a copy of the DHO's report on October 6, 2023, Clark's alleged "delayed receipt of the report did not violate his due process rights." Zapata v. Warden FCI Edgefield, No. 26-6187, 2026 WL 1146881, at *1 (4th Cir. Apr. 28, 2026) (per

8

curiam) (unpublished). Accordingly, the court grants respondent's motion to dismiss or in the alternative for summary judgment.

As for Clark's motion to seal, Clark asks the court to seal any filings disclosing his personal records while incarcerated, including DHO reports, BOP incident reports, and any medical or mental health records. See [D.E. 19] 1–3. "[T]he First Amendment right of access attaches to materials filed in connection with a summary judgment motion." Doe v. Pub. Citizen, 749 F.3d 246, 267 (4th Cir. 2014); see Courthouse News Serv. v. Schaefer, 2 F.4th 318, 326 (4th Cir. 2021); United States v. Doe, 962 F.3d 139, 145 (4th Cir. 2020); Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180–81 (4th Cir. 1988); Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 252–53 (4th Cir. 1988); In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). "Where the First Amendment guarantees access, . . . access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Stone, 855 F.2d at 180 (citation omitted); see Press–Enter. Co. v. Superior Ct., 464 U.S. 501, 510 (1984); Rushford, 846 F.2d at 253.

Clark has not demonstrated a compelling governmental interest in maintaining these records under seal. Parties routinely file unsealed DHO reports and incident reports in habeas corpus actions in this district. Moreover, the only exhibit that respondent filed concerning Clark's mental health was the chief psychologist's finding that Clark was competent to proceed with the disciplinary process. See [D.E. 12-4] 6. Thus, the court denies the motion.

As for Clark's motion for appointment of counsel, no right to counsel exists in habeas corpus actions. See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Mackall v. Angelone, 131 F.3d 442, 446–47 (4th Cir. 1997) (en banc). Nonetheless, the court may appoint counsel if it determines that "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); see Jenkins v.

9

Woodard, 109 F.4th 242, 247 (4th Cir. 2024). This action does not present legally complex issues. Clark has adequately set forth his claims and has the capacity to present those claims. Thus, the interests of justice do not require the appointment of counsel. Accordingly, the court denies the motion. The court denies Clark's request for an extension of time to file future unspecified pleadings as baseless.

III.

In sum, the court GRANTS respondent's motion to dismiss or in the alternative for summary judgment [D.E. 9], DISMISSES petitioner's application for a writ of habeas corpus [D.E. 1], DENIES petitioner's motions [D.E. 18, 19], and DENIES a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001). The clerk shall close the case.

SO ORDERED. This 23 day of June, 2026.

JAMES C. DEVER III
United States District Judge

10